Russell. vs. Arnold

JACOB RUSSELL, plaintiff in error, vs. JOHN F. ARNOLD, defendant in error.

The Act of 1845, exempting the daily, weekly, or monthly wages, of journeymen mechanics and day laborers, from garnishment, is not repealed by the repealing section of the general attachment Act of 1856.

Certiorari, from Bibb county. Tried before Judge LAMAR, May Term, 1858.

John F. Arnold sued Jacob Russell in a Justices Court, and garnisheed the South Western Railroad, and on the return of the answer to the garnishment, plaintiff moved to enter up judgment against the garnishee; to which the defendant objected on the ground, that the monthly wages of laborers and mechanics are exempt from the laws of garnishment. The answer of the garnishee was, that they were indebted to Russell $33, for one month's wages as a fireman for one of their engines, he having been employed by them as such fireman at $33 per month, payable monthly; which objection the Justice overruled, and defendant *certioraried* the case to the Superior Court; said Court sustained the decision of the Justices Court and defendant excepted.

LANIER & ANDERSON, for plaintiff in error.

W. T. MASSEY, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

In 1845, the General Assembly passed an act in the following words: " That from and after the passage of this act, all journeymen mechanics and day laborers shall be exempt from the process and liabilities of garnishment, on their daily, weekly, or monthly wages, whether in the hands of employees or others." *Cobb Dig.* 88.

On the 4th of March, 1856, the General Assembly passed

a general act relating to attachments and garnishments, of which act, the 55th section is in the following words:

"That all Acts and parts of Acts upon the subject of attachments and garnishments, be and the same are, hereby, repealed." *Acts of* 1855–56, 38.

In the present case, the Court below held, *that this section* repealed the former Act.    Was that decision right ?

We think not.

On the 5th of March 1856, the next day after the date. of the Act containing the repealing section aforesaid, the General Assembly passed an Act of which, the first section is in the following words:

"That in all cases hereafter, where any *fi. fa.*, or attachment shall be issued from any of the Courts of this State, the defendant or defendants in said *fi. fa.*, shall be authorized to present to the levying officer, a schedule of such property as may be exempt from levy and sale, and upon failure of the defendant to do so, then the wife of defendant, or any of the children, or any one who shall appear as the next friend of said wife, or child, or children, shall be authorized to do so, *provided*, that said next friend shall give notice, under oath, that the same is done in good faith; and when this shall be done, if the levying officer shall levy and sell said property, he shall be liable to be sued for trespass." *Id. 232.*

This is an Act in aid of the exemption Acts; the passage of it shows, therefore, that the legislature must have considered those Acts as still in force, notwithstanding the passage of the said repealing law on the day previous. The passage of the Act may, *therefore, be taken as* showing, that the words "Acts and parts of Acts upon the subject of attachments and garnishments," contained in the repealing law of the day previous, were intended by the Legislature, not to include the Acts exempting certain property of certain classes of persons from their debts, (which is exempting it from *all* legal process whether by attachment, garnishment, or *fi. fa.*)    The two laws were passed by the same legislature, and with the in-

terval of but a single day, between the passage of the one, and the passage of the other.

Courts must construe the words of a law, in the sense in which the words are used by the Legislature, even should such a construction do violence to the words.

But would construing these repealing words, as, not extending to the exempting laws, be, of necessity, doing violence to the words? In short, is the " subject" of the said Act of 1845, (one of the exempting laws,) " garnishments;" or is it not rather *exemption ?* The object of the Legislature in passing that Act, was *to exempt* " wages," in the cases to which the Act refers, from *the debts* of the laborer or mechanic; the means taken, was merely to relieve the wages from liability to garnishment—they as a debt, not being liable to be reached by any other process. And, certainly, what the legislator, in making a law has for his end, may, with as much propriety, as what he takes for his means, if not with more, be called the " subject" of that law.

There is then as much reason to say, that, exemption from debt was the " subject" of the Act of 1845, as there is to say, that garnishment was the subject of the Act ; is there not more ?

Holding, therefore, that words which say, they repeal all Acts on the "subject" of garnishment, do not repeal this Act of 1845, is not by any means, of necessity, doing violence to the words. As well might we say, that holding that the words do, repeal that Act is, of necessity, doing violence to the words ! In effect, the Act is one which makes the wages to which it refers, exempt from *debt,* not merely from *one mode of* collecting a debt.

We think, then, that the Court below erred in holding that the Act was repealed, by the repealing section of the general attachment Act of 1856.

Judgment reversed..